**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

CHAMBERS OF
**STEPHANIE A. GALLAGHER**
**UNITED STATES MAGISTRATE JUDGE**

101 WEST LOMBARD STREET
**BALTIMORE, MARYLAND 21201**
**(410) 962-7780**
**Fax (410) 962-1812**

May 7, 2014

LETTER TO COUNSEL:

> RE:    *Laurie Jones v. Commissioner, Social Security Administration*;
>            Civil No. SAG-13-2314

Dear Counsel:

On August 9, 2013, the Plaintiff, Laurie Jones, petitioned this Court to review the Social Security Administration's final decision to deny her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (ECF No. 1). I have considered the parties' cross-motions for summary judgment. (ECF Nos. 17, 22). I find that no hearing is necessary. Local Rule 105.6 (D. Md. 2011). This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *see Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). I will deny Ms. Jones's motion and grant the Commissioner's motion. This letter explains my rationale.

Ms. Jones filed her claims for benefits on April 7, 2010, alleging a disability onset date of November 30, 2008. (Tr. 131-42). Her claims were denied initially and on reconsideration. (Tr. 66-72, 75-78). A hearing was held on April 6, 2012 before an Administrative Law Judge ("ALJ"). (Tr. 32-54). Following the hearing, on May 25, 2012, the ALJ determined that Ms. Jones was not disabled under the law during the relevant time frame. (Tr. 15-31). The Appeals Council denied Ms. Jones's request for review, (Tr. 1-5), so the ALJ's decision constitutes the final, reviewable decision of the agency.

The ALJ found that Ms. Jones suffered from the severe impairments of bipolar disorder and polysubstance abuse. (Tr. 20). Despite these impairments, the ALJ determined that Ms. Jones retained the residual functional capacity ("RFC") to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: she is limited to simple, routine, repetitive tasks involving short, simple instructions in an environment with few workplace changes, no public contact and only brief, infrequent contact with supervisors and co-workers.

(Tr. 22). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Ms. Jones could perform jobs existing in significant numbers in the national economy, and that she was not therefore disabled. (Tr. 25).

Ms. Jones presents four arguments on appeal. She argues that: 1) the ALJ erred in not recognizing treatment notes from her treating physician, 2) the ALJ's findings on social functioning are not based on substantial evidence, 3) the ALJ improperly assessed her substance abuse issues, and 4) that she was entitled to a supplemental hearing. Each argument lacks merit

*Laurie Jones v. Commissioner, Social Security Administration*;
Civil No. SAG-13-2314
May 7, 2014
Page 2

and is addressed in turn.

First, Ms. Jones contends that the ALJ erred in evaluating the medical opinion evidence because she did not recognize treatment notes from treating psychiatrist Dr. Fan.[1]  Pl.'s Mot. 6-7. While the ALJ must generally give more weight to a treating physician's opinion, where that opinion is not supported by clinical evidence or is inconsistent with other substantial evidence, it should be accorded significantly less weight. *Craig*, 76 F.3d at 590; 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Specifically, an ALJ may attribute little weight to a treating source opinion when it is unsupported, inconsistent with other evidence in the record, or based on a short term treating relationship. *Id.*; *see also Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) ("The ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence[.]"). Treating psychiatrist Dr. Fan provided two assessments of Ms. Jones's ability to perform work — one in light of her physical limitations and another based on her mental impairments.[2]  In the mental assessments Dr. Fan opined that Ms. Jones was incapable of working in proximity or in coordination with others, dealing with normal work stresses, and performing semiskilled or skilled work; and that she suffered from extreme limitations in her social function, and had experienced more than three episodes of decompensation. (Tr. 90-95, 396-400). The ALJ assigned that opinion no weight, finding it unsupported by the record. (Tr. 24). Further, the ALJ stated that the source of the opinion was unknown because of an illegible signature, and that no treatment records accompanied the opinion. The ALJ was mistaken, because the record does actually contain treatment notes from Dr. Fan. I find the error ultimately harmless, because Dr. Fan's treatment notes are inconsistent with the severe mental limitations she opined that Ms. Jones had. Ms. Jones saw Dr. Fan seven times from March to August 2010 for medication management, (Tr. 353), and notes from the psychiatrist are found in the records from Key Point Community Mental Health Center.[3]  (Tr. 273-76, 286, 322, 332-36, 338, 342-45, 353-60); *see also* (Tr. 337) (unsigned note that appears to be in Dr. Fan's handwriting).  While not attributing the notes to Dr. Fan, the ALJ cited those records in the RFC assessment and summarized that it had been noted that Ms. Jones had auditory hallucinations, admitted cocaine use, and was diagnosed with bipolar disorder and

---

[1] "Fan" is this Court's best guess as to the correct spelling. As an indication of how difficult the signature and handwritten name are to decipher, the ALJ believed the psychiatrist's name was Phan, Ms. Jones reads it as Fam, and the Commissioner believes it to be Fan.

[2] In the physical assessment, Dr. Fan opined that Ms. Jones could only sit for up to two hours a day, stand no more than three hours per day, and would miss more than four days per month of work due to her physical impairments, which would render her incapable of even sedentary work. (Tr. 339). The ALJ properly discounted this opinion, finding that there was "nothing in the record to support any physical limitations" and that it conflicted with Ms. Jones's testimony that she did not suffer from physical impairments. (Tr. 24). As a psychiatrist, Dr. Fan was not treating Ms. Jones for any physical impairment, and it diminishes her credibility as a medical witness that she was willing to attest that Ms. Jones is precluded from the limited physical demands of sedentary work based on a bipolar diagnosis. *See* (Tr. 339).

[3] Many of the notes are duplicates of each other.

*Laurie Jones v. Commissioner, Social Security Administration*;
Civil No. SAG-13-2314
May 7, 2014
Page 3

polysubstance abuse.  (Tr. 23).  In the appointment summaries, Dr. Fan repeatedly checked off that Ms. Jones was cooperative, had normal thoughts, and was at no risk.  (Tr. 354-59).  Though, her concentration was often impaired, her mood ranged from dysthymic to irritable, and she was noted to have hallucinations at three appointments.  *Id.*  Although Dr. Fan adjusted Ms. Jones's medications, she noted that Ms. Jones reported the medications were helping.  (Tr. 356).  Dr. Fan's brief narrative reports from each appointment do not support the extreme level of mental impairment that she opined Ms. Jones to have in her mental health assessment.  Also, as the ALJ noted, Dr. Fan's opinion is contradicted by the record, including opinions from three mental health consultants who found Ms. Jones suffered from more moderate mental impairments, and that she was able to perform work with some nonexertional restrictions.[4]  *See* (Tr. 300-17, 361-74, 474-83).  In light of the contradictory evidence and the lack of substantiation in Dr. Fan's own treatment notes, I cannot find that the ALJ's error in deciphering the psychiatrist's signature on the mental health assessment form requires remand.

Next, Ms. Jones argues that the ALJ failed to base her assessment of mild restrictions in social functioning on substantial evidence.  Pl. Mot. 7-9; *see* (Tr. 21).  The ALJ based her finding on Ms. Jones's reports to a consultative examiner that she cared for her son, enjoyed attending his games, and visited church three times per month.  (Tr. 21, 288).  Ms. Jones protests the ALJ's mild findings because the consultative examiner found her "very limited" in social interactions.  *See* (Tr. 291).  However, an ALJ is required to consider "all of the relevant medical and other evidence" in determining an RFC assessment.  *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).  Further, an ALJ is not required to discuss every sentence in the medical opinions.  *See Melgarejo v. Astrue*, No. JKS–08–3140, 2009 WL 5030706, at *4 (D. Md. Dec. 15, 2009) (quoting *Piney Mountain Coal Co. v. Mays*, 176 F.3d 753, 762 n. 10 (4th Cir.1999)).  Here, the ALJ properly grounded her finding on Ms. Jones's reports to the consultative examiner, in which she admitted to regular interactions with her son's school, reported attendance at school activities and church, reported no problems getting along with co-workers, and stated that she went out in public a few times a month, though she objected to crowds.  (Tr. 288-89).  Ultimately, despite the "mild" restrictions in social functioning, the ALJ included a number of restrictions in the RFC assessment on Ms. Jones's ability to interact with others, including no contact with the public and only brief, infrequent contact with supervisors and co-workers.  (Tr. 22).  Thus, I can find no error in the ALJ's assessment of Ms. Jones's social functioning.

Third, Ms. Jones alleges that the ALJ erred in assessing her substance abuse.  I disagree.  Drug addiction and alcoholism ("DAA") becomes a material issue only where the Commissioner determines that a claimant is disabled considering all of the claimant's medically determinable impairments.  SSR 13-2P, 2013 WL 621536, at *2 (Feb. 20, 2013); 20 C.F.R. § 404.1535, 416.935.  Here, the ALJ determined that Ms. Jones suffered from the severe impairments of bipolar disorder and polysubstance abuse.  (Tr. 20).  However, even in light of evidence of drug use and dependence, the ALJ found Ms. Jones was not disabled.  (Tr. 22-26).  Thus, the ALJ's decision did not turn on Ms. Jones's alleged drug use.  Ms. Jones's contention that medical

---

[4] At least two of the mental health consultants reviewed the records from Key Point Community Mental Health Center and cited them in formulating their opinions.  *See* (Tr. 373, 474-75).

*Laurie Jones v. Commissioner, Social Security Administration*;
Civil No. SAG-13-2314
May 7, 2014
Page 4

expert Dr. Stuart Gitlow "improperly mingled substance abuse into the record in order to thwart her claim," Pl. Mot. 9, is baseless.  Dr. Gitlow analyzed Ms. Jones's treatment records — which included statements from treating physicians regarding her continued drug use and the demonstration of symptoms consistent with substance use — but found her capable of performing full time work.  (Tr. 474-75).  Further, the ALJ was not required to undertake a parallel "DAA evaluation process," as SSR 13-2P only requires one where the claimant is found to be disabled when substance abuse is considered.  2013 WL 621536, at *5.  Remand is, therefore, unwarranted.

Lastly, Ms. Jones argues that she was entitled to a supplemental hearing so that she could cross examine Dr. Gitlow.  Pl. Mot. 10-11.  The ALJ proffered Dr. Gitlow's posthearing Medical Expert Interrogatory to Ms. Jones and her previous counsel, and invited submission of written comments, a written statement as to the facts and the law applicable to the case in light of the report, additional records, and/or written questions directed to Dr. Gitlow.  (Tr. 230).  Ms. Jones did not avail herself of this opportunity.  Instead, she argues that the Hearings, Appeals, and Litigation Manual ("HALLEX") required the ALJ to offer her a supplemental hearing so that she could confront Dr. Gitlow.  Pl. Mot. 10-11; *see* HALLEX I-2-7-30, Proffer Procedures.  As this Court has previously observed, HALLEX is an internal guidance document and lacks the force of law.  *Naundorf v. Astrue*, No. SKG-10-650, 2011 WL 1230810, at *7 (D. Md. Mar. 29, 2011).  Further, HALLEX I-2-7-30 only requires that the claimant be allowed to cross-examine the author of a posthearing report where the ALJ determines that such questioning is necessary.  Even if it were the case that the ALJ erred in failing to provide an opportunity to request a hearing in the proffer letter, the omission was ultimately harmless.  "Remand is only necessary where the ALJ's error jeopardizes the existence of substantial evidence to support the ALJ's decision or where the ALJ applies the wrong legal standard." *Id.* at *8 (citing *Hood v. Astrue*, No. 3:07–00641, 2010 WL 4629893, at *12 (S.D.W.Va. Nov. 3, 2010)).  Here, Ms. Jones was given the opportunity to cross-examine Dr. Gitlow, though in the form of written questions.  Dr. Gitlow reviewed and analyzed the medical evidence already in the record before the ALJ.  His opinion was consistent with the other opinions relied upon by the ALJ, and consistent with the medical record.  Therefore, remand is unlikely to produce a different outcome.

For the reasons set forth herein, Plaintiff's motion for summary judgment (ECF No. 17) will be DENIED and the Commissioner's motion for summary judgment (ECF No. 22) will be GRANTED.  The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion.  An implementing Order follows.

Sincerely yours,

/s/

Stephanie A. Gallagher
United States Magistrate Judge